IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY CANOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-22-182-GLJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Claimant Jay Lee Canoe requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

1

national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] To determine eligibility for a Title II CIB claim, "the Commissioner relies on the same five-step sequential evaluation process used to determine disability in adults." *Geist v. Astrue*, 2010 WL 3777335, at *1 (D. Colo. Sept. 20, 2010) (*citing Ahearn v. Astrue*, 2010 WL 653712 at *3 (N.D.N.Y. Feb. 22, 2010).

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 31 years old at the time of the administrative hearing. (Tr. 98). He completed the tenth grade while taking special education classes and has no past relevant work. (Tr. 99-100). Claimant alleges an inability to work since November 1, 2007, due to limitations imposed by seizures, sciatica, psoriatic arthritis, high blood pressure, diabetes, depression, and anxiety. (Tr. 348).

## Procedural History

On April 30, 2020, Claimant applied for child's insurance benefits under Title II (42 U.S.C. §§ 401, *et seq*.) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. His applications were denied initially and upon reconsideration. On April 22, 2021, Administrative Law Judge ("ALJ") Laura Roberts conducted an administrative hearing in Tulsa, Oklahoma, and entered an unfavorable decision on May 21, 2021. (Tr. 85, 92). The Appeals Council denied review making the ALJ's opinion the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. § 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision as to Claimant's child's insurance benefits ("CIB") claim, at step two. She found that Claimant satisfied the age requirement as of his alleged onset date of November 1, 2007, but did not have any severe impairments prior to attaining age twenty-two, and thus did not qualify for CIB. (Tr. 61-67). As to Claimant's supplemental security income ("SSI") application, the ALJ made her decision at step five of the sequential evaluation. (Tr. 83-85). At step two she determined that Claimant had the severe impairments of obesity, lumbar degenerative disc disease with stenosis and radiculopathy, psoriatic arthritis, left-side sciatica, diabetes mellitus, seizure disorder, learning disorder in math, depressive disorder, anxiety disorder, and passive-dependent personality disorder. (Tr. 67). She found at step three that Claimant did not meet any Listing. *Id.* At step four she found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), *i.e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently and could sit and stand/walk for six hours in an eight-hour workday except that he could not balance on uneven, moving, or narrow surfaces, could not be exposed to unprotected heights, dangerous moving machinery, open flames, open bodies of water, sharp objects such as knives or blades, chemicals, or extreme hot temperatures, could not perform commercial driving, could occasionally climb ramps and stairs, crouch, crawl and kneel, could frequently stoop, could understand, remember, and carry out simple tasks with simple instructions in a routine work setting, and could occasionally interact with the general public. (Tr. 76). The ALJ concluded that, although Claimant had no previous work

experience, there was work he could perform in the national economy such as routing clerk, pricer, garment folder, clerical sorter, assembler, and polisher. (Tr. 84).

## Review

Claimant contends that the ALJ erred by finding Claimant's impairments related to his CIB claim nonsevere, by finding an RFC unsupported by substantial evidence, and by failing to provide an accurate hypothetical to the vocational expert ("VE"). The Court finds Claimant's first contention persuasive, and thus addresses those issues pertinent to Claimant's CIB claim and evidence that addresses his functioning before his twenty-second birthday in December 2011. (Tr. 318).

As to Claimant's mental impairments, the relevant medical evidence relevant reveals that on December 15, 2006, Claimant presented to the ER for a possible seizure, but was discharged shortly thereafter. (Tr. 1119). On March 21, 2007, neurologist Dr. David Siegler discussed Claimant's mother's reports of frequent "spells" during which Claimant exhibited bizarre behavior or becomes unresponsive. (Tr. 896-97) He found, however, that they were highly unlikely to be seizures and recommended Claimant see a psychiatrist to rule out depression, schizoid personality disorder, or any other psychological basis for the "spells." *Id.* On May 4, 2007, Claimant saw psychiatrist Dr. Virginia Heller who listened to Claimant's reports of "spells" and blackouts. (Tr. 895). She noted Claimant's flat affect, poor insight, judgment, and impulse control, and diagnosed Claimant with conversion disorder and depression. (Tr. 894-95). On November 7, 2007, Claimant began treatment with Dr. Stephen Patton who noted little spontaneous communication, flat affect and also diagnosed Claimant with conversion disorder, mood disorder, as well as a

5

rule-out notation for schizoid personality disorder. (Tr. 1148). Dr. Patton continued to treat Claimant through June 2010 with little change in diagnosis. (Tr. 1136-48). However, he did note on June 11, 2008, that Claimant's thoughts seemed slowed and that he did not always respond to his questions. (Tr. 1145). On January 13, 2009, Claimant arrived at the ER via EMS after experiencing non-clonic seizure-like symptoms of rigidity and unresponsiveness without reaction to painful stimuli. (Tr. 1085). Although Claimant's neurological examination was normal, Claimant was sent home with a diagnosis of seizure disorder and acute seizures. *Id.* On December 23, 2010, Dr. Patton updated his diagnosis to indicate schizoid traits, mood disorder, and a history of conversion disorder. (Tr. 1137). During a visit with licensed professional counselor, Larry Myers, on September 1, 2009, Claimant reported occasional periods of unresponsiveness and okay sleep. (Tr. 1106). On January 26, 2010, Claimant's mother reported to Mr. Myers that Claimant's "spells" were not as frequent, and on June 14, 2010, she reported no recent "spells." (Tr. 1107, 1111). On June 16, 2010. Dr. Patton saw Claimant for the last time and noted his flat affect, paucity of speech, decreased eye contact, and reiterated his diagnosis of schizoid traits and a history of conversion disorder, but replaced Claimant's mood disorder with dysthymia. (Tr. 1136).

As to Claimant's physical impairments, the relevant medical evidence shows that Claimant's BMI ranged from 43 to 51.9. (Tr. 958-1090). [2] On February 11, 2008, Claimant

---

[2] Claimant's BMI was recorded as follows: 45.6 on November 8, 2007 (Tr. 958); 43.1 on January 29, 2008 (Tr. 970); 47.3 on April 29, 2008 (Tr. 984); 47.1 on October 21, 2008 (Tr. 1004); 48.3 on February 3, 2009 (Tr. 1012); 50.3 on June 10, 2009 (Tr. 1019, 1022); 49.5 on September 10,

saw Dr. David Adelson who noted mild psoriatic plaques on Claimant's scalp and both knees. (Tr. 1056). Claimant saw his PCP, Catherine Casey, FNP, on April 29, 2008, for hypertension and also reported no improvement in his psoriasis. (Tr. 984). On February 3, 2009, Claimant saw Dr. Adelson with complaints of rash around the scalp, ears, neck, elbows, and knee. (Tr. 1012). On June 10, 2009, Claimant reported his psoriasis had improved with treatment and reiterated similar reports of little to no psoriasis symptoms through August 10, 2011. (Tr. 1019, 1090-93).

In her written opinion at step two of the CIB claim, the ALJ summarized the relevant evidence in the record but found Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not consistent with treatment records. (Tr. 61-66). She then concluded that Claimant did not have a severe impairment or combination of impairments before attaining age twenty-two. (Tr. 67).

Claimant contends that the ALJ erred at step two in her analysis of his CIB claim by failing to find any of Claimant's medically determinable impairments severe. Claimant has the burden of proof at step two. *Bowen v. Yuckert*, U.S. 137, 145 (1987). This determination "is based on medical factors alone, and 'does not include consideration of, such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (*quoting Williams v. Bowen*, 844 F.2d 750 (10th Cir. 1988)). Although Claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two

---

2009 (Tr. 1024); 51.5 on May 21, 2010 (Tr. 1032); 50.9 on August 24, 2010 (Tr. 1034, 1037); 48.8 on November 24, 2010 (Tr. 1038); and 51.9 on August 10, 2011 (Tr. 1090).

is a *de minimus* showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (*citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *See Hinkle*, 132 F.3d at 1352.

The ALJ found that, during the relevant period, Claimant's medically determinable impairments did not significantly limit his ability to perform basic work-related activities for twelve consecutive months and therefore did not have a severe impairment or combination of impairments. (Tr. 61). The record contains medical evidence of Claimant's psoriasis, hypertension, mood disorder, conversion disorder, obesity, and an acute seizure.

The ALJ reviewed all the evidence and found that Claimant's mood disorder had stabilized with treatment and medication by late 2008, but did not discuss the portions of those records which note schizoidal traits, flat affect, slowed thoughts, and little spontaneous communication. (Tr. 66, 1136-37, 1141-42). Although the ALJ never discusses Claimant's diagnosis of conversion disorder by name, she does discuss Claimant's "spells" of unresponsiveness. (Tr. 65-66). She notes normal neurological findings as well as indications that Claimant's "spells" were unlikely to be seizures and likely psychological in nature. (Tr. 65). She then discusses Claimant's January 2009 ER treatment for an acute seizure. *Id.* She points to reports that Claimant's spells had lessened in frequency by 2010 as well as one report of a period with any "spells." (Tr. 66).

The ALJ also found that, for the CIB claim, Claimant's obesity was non-severe but conceded that "there is little evidence of any specific or quantifiable impact the claimant's

8

obesity had on the claimant's physical or mental functioning." (Tr. 65). However, a determination of no severe impairment requires more than a finding of insufficiency of evidence. *See Chavez v. Colvin,* 2015 WL 13662583, at *3 (D.N.M. May 15, 2015) (finding that the ALJ impermissibly stopped the sequential evaluation process at step two on the basis that there was insufficient evidence to find that the plaintiff had a severe impairment). "Instead, SSR 85-28 requires that the evidence 'clearly establish' that the impairment is not severe; if not the ALJ must proceed to the subsequent steps of the sequential evaluation process." *Gonzales v. Berryhill*, 2018 WL 4688312 (D.N.M Sept. 28, 2018) (*citing* Soc. Sec. R. 85-28, 1985 WL 56856, at *3). Absent a finding that the evidence "clearly established" that Claimant had no severe impairment, the ALJ was required to continue through the sequential analysis.[3]

Additionally, the ALJ found that Claimant's obesity *was* a severe impairment for his SSI claim despite Claimant's BMI remaining comparable between the relevant periods of both the CIB and SSI claim. (Tr. 65, 74).[4] Similarly, the ALJ found Claimant has a severe impairment of a learning disorder in mathematics in relation to his SSI, (Tr. 67), claim but does not discuss this impairment in relation to Claimant's CIB claim, when Claimant was in school. *See Moondragon ex rel. K.K.M. v. Colvin*, 2015 WL 1209239,

---

[3] "Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step." Soc. Sec. R 85-28, 1985 WL 56856, at *3.

[4] When discussing Claimant's CIB claim, the ALJ states that "[C]laimant's BMI has ranged from 43-51.9[,]" (Tr. 65), but also notes while discussing Claimant's SSI claim that "[C]laimant's BMI has exceeded 50 throughout the record." (Tr. 74).

at *3 (E.D. Okla. Mar. 17, 2015) ("The ALJ reviewed all the evidence and found that the claimant's medically determinable impairment of ADHD was well-controlled with the proper dosage of medication (Tr. 16.). He noted the claimant's occupational therapy notes, and continued treatment due to his persistent delays, but discounted his ADHD, occupational therapy, and placement in special education as mild. The Court finds, however, that this meets the claimant's *de minimus* burden of showing an impairment or combination of impairments at step two.").

The Court finds that the Claimant has met his *de minimus* burden to show a severe impairment or combination of impairments at step two. *See Cantrell v. Colvin*, 2013 WL 5416369, at *3 (E.D. Okla. Sept. 26, 2013) ("In this case, the claimant was treated a number of times for hidradenitis suppurativa, and was also sent to a pain clinic to manage her pain. The Court is satisfied that this meets the claimant's *de minimus* burden of showing an impairment at step two.") (*citing Hill v. Asture,* 289 F. App'x 289, 292 (10th Cir. 2008) ("The evidence ... showed that she ... had a consultation with a rheumatologist, Dr. Booth, for purposes of evaluating arthritis. He found that she had some osteoarthritis of the knees. He noted pain in her other joints but could not definitively assign an etiology to the pain at that time. Thus, under a *de minimus* standard, the ALJ's finding that arthritis was not a medically determinable impairment appears to be unsupported by substantial evidence."). Because Claimant has met his burden of showing he had a severe impairment at step two, the decision of the Commissioner is hereby reversed and the case remanded for further analysis. Upon remand, the ALJ should evaluate Claimant's impairments, singly and in combination, in accordance with §§ 404.1520a(c)(3), 416.920a(c)(3).

## Conclusion

The Court finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Accordingly, the decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 15th day of August, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**